FILED

January 04, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002324428

**116**
JENNIFER WITHERELL CRASTZ (STATE BAR NO. 185487)
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard
12th Floor
Encino, California 91436-2829
(818) 501-3800 telephone
(818) 501-2985 facsimile

Attorneys for Movant
WELLS FARGO BANK, National Association,
successor in interest by consolidation with
PLACER SIERRA BANK, which had previously
merged or consolidated with Bank of Lodi

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# (SACRAMENTO DIVISION OFFICE)

| | |
|---|---|
| IN RE:<br><br>DANIEL G. MILLS aka ENGINEERED AUTOMATION aka COPE MANUFACTURING aka RPM MIXING SYSTEMS fdba PAL'S FLOWERS AND GIFTS,<br><br>Debtor in Possession.<br><br>_____<br><br>WELLS FARGO BANK, National Association, successor in interest by consolidation with PLACER SIERRA BANK, which had previously merged or consolidated with Bank of Lodi,<br><br>Movant,<br><br>vs.<br><br>GARY FARRAR, Chapter 7 Trustee,<br><br>Respondents.<br>_____ | CASE NO. 09-21258<br><br>DC No. JWC-1<br><br>CHAPTER 7<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY [Real Property] AS TO CHAPTER 7 TRUSTEE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF TED FAUST AND P. RICHARD SEEVERS IN SUPPORT THEREOF**<br><br>L.B.R. 9014-1(f)(2)<br><br>DATE: January 19, 2010<br>TIME: 9:31 a.m.<br>DEPT: B<br>CTRM: 33<br>FLOOR: 6th<br>JUDGE: Hon. Thomas C. Holman<br>ADDRESS: 501 I Street, Sacramento, California 95814 |

1

1    Movant WELLS FARGO BANK, National Association, successor in interest by
2    consolidation with PLACER SIERRA BANK, which had previously merged or consolidated with
3    Bank of Lodi  (hereinafter "Movant") hereby moves the Court for an Order granting relief from the
4    automatic stay under 11 U.S.C. § 362(a) against GARRY FARRAR, Chapter 7 Trustee, regarding
5    Debtor DANIEL G. MILLS aka ENGINEERED AUTOMATION aka COPE MANUFACTURING
6    aka RPM MIXING SYSTEMS fdba PAL'S FLOWERS AND GIFTS, Debtor in Possession
7    (hereinafter "Debtor"), to permit Movant and its successors and assigns, to exercise the rights
8    granted under that certain agreement and related documents affecting real property of Debtor, as
9    more fully described herein.  This motion is made and based upon the following:

10                              **I. STATEMENT OF FACTS**

11       1.      At all times herein mentioned, Movant was and now is a corporation duly authorized
12   to conduct business and doing business within California.

13       2.      On or about **January 26, 2009**, Debtor commenced the above-captioned bankruptcy
14   case by filing a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States
15   Code ("Bankruptcy Code") and imposing an automatic stay upon Movant from proceeding with its
16   state court remedies regarding the real property discussed herein below.

17       3.      This Court has jurisdiction in this core proceeding pursuant to 28 U.S.C. § 1334(a)
18   and (b), 28 U.S.C. § 157(a) and (b)(2)(G). Pursuant to 28 U.S.C. § 1409(a), this proceeding is
19   properly commenced and prosecuted in this Court in which Debtor's Chapter 7 case is pending.

20       4.      The Debtor was discharged on May 12, 2009 according to this Court's docket.

21       5.      On or about **August 28, 2003**, Debtor borrowed the sum of **$318,500.00** from
22   Movant[1] for the purchase or refinance of commercial property commonly known as **20350 North**
23   **Kennefick Road, Acampo, CA 95220, APN No. 017-140-42** (hereinafter the "Real Property")
24   pursuant to a written promissory note (hereinafter "Agreement") signed by Debtor herein,

25

26          [1] Movant Wells Fargo Bank, National Association, is successor in interest by consolidation with
27   Placer Sierra Bank which had previously merged or consolidated with Bank of Lodi.  A true and correct
     copy of the printout from National Information Center's website confirming the merger, as well as
28   ownership by Wells Fargo, is attached to the Declaration of Ted Faust as Exhibit "A."

                                        2

1  evidencing Debtor's obligation to pay Movant. A true and correct copy of the Agreement is
2  attached as Exhibit "1" to the accompanying Declaration of Ted Faust.

3      6.      On or about September 16, 2003, Debtor executed and delivered to Movant a Change
4  in Terms Agreement ("CITA") extending the due date. A true and correct copy of the CITA is
5  attached as Exhibit "2" to the accompanying Declaration of Ted Faust.

6      7.      The various documents referred to in the preceding paragraphs are referred to herein
7  collectively as the "Loan Documents," and the indebtedness reflected thereby is referred to herein as
8  the "Loan."

9      8.      To secure the Debtor's obligation under the Loan Documents, Debtor executed a
10  Deed of Trust to Movant, granting Movant a security interest in and to the Real Property. Movant
11  perfected its security interest in the Real Property by recording the Deed of Trust with the **County
12  of San Joaquin, Recorder's Book 2003-210170**. A true and correct copy of the recorded Deed of
13  Trust is attached as Exhibit "3" to the accompanying Declaration of Ted Faust.

14      9.      Movant has performed all conditions, promises and covenants on its part to be
15  performed in accordance with the terms of the Loan Documents.

16      10.     On or about **April 15, 2009**, Debtor defaulted on the Loan by failing to pay the
17  monthly payments due and owing. As of the date of this motion, there is due, owing and unpaid to
18  Movant from Debtor the pay off amount of **$248,204.49,** plus attorney's fees and costs.

19      11.     According to the Debtor's Schedule D on file with this Court, the Real Property has a
20  value of **$700,000.00.** Movant disagrees with Debtor's valuation and therefore attaches the
21  Declaration of P. Richard Seevers to support the appraisal performed by Movant. Movant's
22  appraisal report shows an "As-Is Market Value" of **$370,000.00**, and "Replacement Cost New
23  (Insurable Value)" of **$615,000.00.** A true and correct copy of Debtor's Schedule D is attached as
24  Exhibit "4" to the accompanying Declaration of Ted Faust. A true and correct copy of the appraisal
25  is attached as Exhibit "5" to the accompanying Declaration of P. Richard Seevers.

26      12.     Moreover, according to Debtor's Schedule D, the following creditors hold a lien
27  against the Real Property:

28

3

| | | |
|---|---|---|
| Movant (1st Deed of Trust) | $ | 251,000.00 |
| Calone Law Group (2nd Deed of Trust) | | 25,000.00 |
| Internal Revenue Service | | 155,000.00 |
| San Joaquin Tax Collector | | 80,000.00 |
| Guntert Sales | | 40,000.00 |
| Employment Development Department | | 40,000.00 |
| Franchise Tax Board | | 27,000.00 |
| SMC Corporation Judgment Lien | | 25,000.00 |
| Bank of America Judgment Lien | | 12,000.00 |
| **Total** | $ | **655,000.00** |

13.     Considering the amount of the indebtedness secured by the Real Property and the costs of sale which would be incurred in selling the Real Property, there is no equity which could be realized from the Real Property for the benefit of the Debtor's estate.

## II. MOVANT SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY OF 11 U.S.C. § 362(A) TO EXERCISE ITS RIGHTS REGARDING THE REAL PROPERTY.

Section 362(d) of the Bankruptcy Code states that:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection(a) of this section, if–

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The facts of this case demonstrate that the automatic stay should be lifted "for cause." The

4

1  Bankruptcy Code mandates that secured creditors must, at a minimum, be afforded a reasonable
2  assurance that the value of their security interests in property of a debtor is and will continue to be
3  "adequately protected" by the debtor. <u>Metropolitan Life Ins. v. Murel Holding Corp.</u>, 75 F.2d 941
4  (2nd Cir. 1935). The debtor bears the burden of proving that the creditor's interest in the property is
5  adequately protected. <u>Guavin v. Wagner</u>, 24 B.R. 578, 580 (9th Cir. BAP 1982). If the debtor fails
6  to meet this burden, the creditor is entitled to relief under §362(d)(1). <u>In re Winslow Center</u>
7  <u>Associates</u>, 32 B.R. 685, 687 (Bankr. E.D. Pa. 1983).

8      In the present case, Movant's interest in the Real Property is not being adequately protected.
9  Debtor defaulted under the Loan Documents by failing to make the payment due on **April 15, 2009**,
10  and all payments due thereafter.

11      In addition, the Real Property is not necessary to an effective reorganization since Debtor has
12  failed to make post-petition payments due and owing, and the Debtor does not reside at the Real
13  Property. The Real Property is a commercial property.

14      Finally, relief from stay is warranted as Debtor has no equity in the subject Real Property. In
15  determining whether there is equity in the subject property, all encumbrances, including all costs
16  and fees, against the property must be considered. <u>In re Development, Inc.</u>, 36 B.R. 998 (Bankr. D.
17  Haw. 1984). As set forth herein, the Real Property has an "As-Is Market Value" of **$370,000.00**,
18  and "Replacement Cost New (Insurable Value)" of **$615,000.00**, while Debtor's obligation to
19  Movant, without considering attorney's fees and costs, is **$655,000.00**. As such, it is irrefutable that
20  Debtor and Debtor's estate has no equity in the subject Real Property, and therefore, relief from the
21  automatic stay should be granted as to the Trustee, since the Debtor has already received a
22  discharge.

23  ///
24  ///
25  ///
26  ///
27  ///
28

5

## III. RELIEF REQUESTED

WHEREFORE, Movant respectfully requests that this court issue an Order as follows:

1.　Terminating the automatic stay of 11 U.S.C. § 362(a), effective immediately, to permit Movant and any agents, successors-in-interest and assignees, to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Real Property;

2.　That the 10-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

DATED: January 4, 2010

Respectfully submitted,

HEMAR, ROUSSO & HEALD, LLP

By: */s/ Jennifer Witherell Crastz*
JENNIFER WITHERELL CRASTZ
Attorneys for Movant

# DECLARATION OF TED FAUST

I, TED FAUST, declare as follows:

1.     I am a Loan Officer for WELLS FARGO BANK, National Association, successor in interest by consolidation with PLACER SIERRA BANK, which had previously merged or consolidated with Bank of Lodi (hereinafter "Movant"), and am principally responsible for the collection of the indebtedness owed by DANIEL G. MILLS aka ENGINEERED AUTOMATION aka COPE MANUFACTURING aka RPM MIXING SYSTEMS fdba PAL'S FLOWERS AND GIFTS, Debtor in Possession (hereinafter "Debtor") to Movant.

2.     At all relevant times I have had responsibility for the collection of Movant's accounts with respect to the real property which is the subject of this motion and I have custody and control of the business records kept and maintained by Movant in the regular course of it business with respect to such account. Moreover, I have personal knowledge of the facts hereinafter set forth except where stated on information and belief and where so stated, I am informed and believe that such facts are true and correct. If called as a witness, I could and would testify thereto.

3.     On or about **August 28, 2003,** Debtor borrowed the sum of **$318,500.00** from Movant[2] for the purchase or refinance of commercial property commonly known as **20350 North Kennefick Road, Acampo, CA 95220, APN No. 017-140-42** (hereinafter the "Real Property") pursuant to a written promissory note (hereinafter "Agreement") signed by Debtor herein, evidencing Debtor's obligation to pay Movant. A true and correct copy of the Agreement is attached hereto and incorporated herein as Exhibit "1."

4.     On or about September 16, 2003, Debtor executed and delivered to Movant a Change in Terms Agreement ("CITA") extending the due date. A true and correct copy of the CITA is attached hereto and incorporated herein as Exhibit "2."

5.     The various documents referred to in the preceding paragraphs are referred to herein

---

[2] Movant Wells Fargo Bank, National Association, is successor in interest by consolidation with Placer Sierra Bank which had previously merged or consolidated with Bank of Lodi. A true and correct copy of the printout from National Information Center's website confirming the merger, as well as ownership by Wells Fargo, is attached hereto and incorporated herein as Exhibit "A."

7

collectively as the "Loan Documents," and the indebtedness reflected thereby is referred to herein as the "Loan."

6. To secure the Debtor's obligation under the Loan Documents, Debtor executed a Deed of Trust to Movant, granting Movant a security interest in and to the Real Property. Movant perfected its security interest in the Real Property by recording the Deed of Trust with the **County of San Joaquin, Recorder's Book 2003-210170**. A true and correct copy of the recorded Deed of Trust is attached hereto and incorporated herein as Exhibit "3."

7. Movant has performed all conditions, promises and covenants on its part to be performed in accordance with the terms of the Loan Documents.

8. On or about **April 15, 2009**, Debtor defaulted on the Loan by failing to pay the monthly payments due and owing. As of the date of this motion, there is due, owing and unpaid to Movant from Debtor the pay off amount of **$248,204.49,** plus attorney's fees and costs. Debtor has also made no payments to Movant post-petition.

9. According to the Debtor's Schedule D on file with this Court, the Real Property has a value of **$700,000.00.** Movant disagrees with Debtor's valuation and therefore attaches the Declaration of P. Richard Seevers to support the appraisal performed by Movant. Movant's appraisal report shows an "As-Is Market Value" of **$370,000.00**, and "Replacement Cost New (Insurable Value)" of **$615,000.00.** A true and correct copy of Debtor's Schedule D is attached hereto and incorporated herein as Exhibit "4. A copy of the appraisal is attached as Exhibit "5" to the accompanying Declaration of P. Richard Seevers.

10. Moreover, according to Debtor's Schedule D, the following creditors hold a lien against the Real Property:

| | | |
|---|---|---|
| Movant (1st Deed of Trust) | $ | 251,000.00 |
| Calone Law Group (2nd Deed of Trust) | | 25,000.00 |
| Internal Revenue Service | | 155,000.00 |
| San Joaquin Tax Collector | | 80,000.00 |
| Guntert Sales | | 40,000.00 |

| | | |
|---|---|---|
| Employment Development Department | | 40,000.00 |
| Franchise Tax Board | | 27,000.00 |
| SMC Corporation Judgment Lien | | 25,000.00 |
| Bank of America Judgment Lien | | 12,000.00 |
| **Total** | **$** | **655,000.00** |

11.     Considering the amount of the indebtedness secured by the Real Property and the costs of sale which would be incurred in selling the Real Property, there is no equity which could be realized from the Real Property for the benefit of the Debtor's estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 4, 2010 at San Leandro, CA.

/s/ Ted Faust

_____
TED FAUST

## DECLARATION OF P. RICHARD SEEVERS

I, P. RICHARD SEEVERS, hereby declare as follows:

1.     I am a certified general real estate appraiser with significant experience in the appraisal of real property in California.

2.     Attached as Exhibit "5" is a summary appraisal of the real property located at **20350 North Kennefick Road, Acampo, CA 95220, APN No. 017-140-42**. The appraisal was prepared in accordance with the policies, practices, and standards of the Code of Professional Ethics and Standards of Professional Conduct of the Appraisal Institute and intended to conform with the Uniform Standards of Professional Appraisal Practice (USPAP), as promulgated by the Appraisal Standards Board of the Appraisal Foundation.

3.     I prepared the appraisal in conjunction with my staff, and its contents are true, accurate, and correct, based on my personal knowledge and belief. The appraisal is dated as of August 25, 2009 and reflects an "As-Is Market Value" of **$370,000.00**, and "Replacement Cost New (Insurable Value)" of **$615,000.00**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 4, 2010, at Rocklin, California.


*/s/ P. Richard Seevers*

P. RICHARD SEEVERS
CA Certificate No. AG001723

10



## National Information Center

A repository of financial data and institution characteristics
collected by the Federal Reserve System

| NIC Home | Institution Search | FBO Search | Top 50 BHCs |
|----------|-------------------|------------|-------------|
| BHCPR Peer Reports | FAQ | | |

**Institution History for**  BANK OF LODI, NATIONAL ASSOCIATION (777160)

2 institution history record(s) found.                    Previous Page 1 ▾

| Event Date | Historical Event |
|------------|------------------|
| 1983-07-18 | BANK OF LODI, NATIONAL ASSOCIATION located at 701 SOUTH HAM LANE, LODI, CA was established as a National Bank. |
| 2004-12-11 | BANK OF LODI, NATIONAL ASSOCIATION was **acquired** by PLACER SIERRA BANK. |

Page 1 of 1

NIC Home   |   FAQ   |   Help   |   Contact Us

**EXHIBIT A, Page 1 of 3**

FFIEC home | Federal Reserve
Board home

Accessibility | Disclaimer |
Privacy Policy

## National Information Center

A repository of financial data and institution characteristics
collected by the Federal Reserve System

| NIC Home | Institution Search | FBO Search | Top 50 BHCs |
| BHCPR Peer Reports | FAQ | | |
| Institution History | | | |

You asked for:
**PLACER SIERRA BANK**

This institution has become a branch and been renamed (see Institution History). The current
information is:
**DOWNTOWN AUBURN BRANCH**
949 LINCOLN WAY
AUBURN, CA, UNITED STATES 95603

Institution Type: Domestic Branch of a Domestic Bank
RSSD ID: 33772
Head Office: WELLS FARGO BANK, NATIONAL ASSOCIATION

**Financial Data**

Financial statements for this institution type are not available.

NIC Home | FAQ | Help | Contact Us

**EXHIBIT A, Page 2 of 3**



**National Information Center**
A repository of financial data and institution characteristics
collected by the Federal Reserve System

| NIC Home | Institution Search | FBO Search | Top 50 BHCs |
|---|---|---|---|
| BHCPR Peer Reports | FAQ | | |

**Institution History for** DOWNTOWN AUBURN BRANCH (33772)

8 institution history record(s) found.                                    Page 1 ▼

| Event Date | Historical Event |
|---|---|
| 1979-12-31 | PLACER SAVINGS AND LOAN ASSOCIATION located at 949 LINCOLN WAY, AUBURN, CA was established as a Savings & Loan Association. |
| 1992-05-26 | PLACER SAVINGS AND LOAN ASSOCIATION was **renamed** to PLACER SAVINGS BANK. |
| 1999-08-11 | PLACER SAVINGS BANK was **renamed** to PLACER COMMUNITY BANK and **changed** from Savings & Loan Association to State Member Bank. |
| 1999-09-11 | PLACER COMMUNITY BANK was **renamed** to PLACER SIERRA BANK. |
| 2003-11-15 | PLACER SIERRA BANK **sold assets** to PLUMAS BANK. |
| 2003-11-15 | PLACER SIERRA BANK **sold assets** to PLUMAS BANK. |
| 2007-09-22 | PLACER SIERRA BANK was **acquired** by WELLS FARGO BANK, NATIONAL ASSOCIATION. |
| 2007-09-22 | PLACER SIERRA BANK was **renamed** to DOWNTOWN AUBURN BR and **became** a branch of WELLS FARGO BANK, NATIONAL ASSOCIATION. |

Page 1 of 1

NIC Home  |  FAQ  |  Help  |  Contact Us

**EXHIBIT A , Page 3 of 3**

# EXHIBIT 1

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $318,500.00 | 08-28-2003 | 09-01-2018 | 2002103 | 605 / 17 | | JLS | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Daniel G. Mills, Sally A. Mills, Michael A. Valdez and Margie A. Valdez
P.O. Drawer 2660
Lodi, CA 95241

**Lender:** Bank of Lodi, N.A.
Lodi Office
701 South Ham Lane
Call Box 3009
Lodi, CA 95242

**Principal Amount: $318,500.00** **Date of Note: August 28, 2003**

**PROMISE TO PAY.** Daniel G. Mills, Sally A. Mills, Michael A. Valdez and Margie A. Valdez ("Borrower") jointly and severally promise to pay to Bank of Lodi, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Eighteen Thousand Five Hundred & 00/100 Dollars ($318,500.00), together with interest on the unpaid principal balance from August 28, 2003, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 179 monthly consecutive principal and interest payments in the initial amount of $2,928.80 each, beginning October 1, 2003, with interest calculated on the unpaid principal balances at an interest rate based on the Bank's Base Rate (Three Year Reset) (currently 4.500%), plus a margin of 1.750 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.250%; and one principal and interest payment of $2,927.30 on September 1, 2018, with interest calculated on the unpaid principal balances at an interest rate based on the Bank's Base Rate (Three Year Reset) (currently 4.500%), plus a margin of 1.750 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.250%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the Bank's Base Rate (Three Year Reset) (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each 36 Months. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.500%. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates.** NOTICE: Under no circumstances will the interest rate on this Note be less than 7.250% or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $50.00**. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of Lodi, N. A., Call Box 3009 Lodi, CA 95241-1913.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase by 6.000 percentage points, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

# PROMISSORY NOTE
## (Continued)

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of San Joaquin County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by Deed of Trust dated August 28, 2003 on real property located at 20350 North Kennefick Road, Acampo, CA 95220.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank of Lodi, N. A. Call Box 3009 Lodi, CA 95241-1913

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms any Indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X _____
Daniel G. Mills, Individually

X _____
Michael A. Valdez, Individually

X _____
Sally A. Mills, Individually

X _____
Margie A. Valdez, Individually

# EXHIBIT 2

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $318,500.00 | 09-16-2003 | 09-01-2018 | 2002103 | 665 / 17 | | JLS | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Daniel G. Mills, Sally A. Mills, Michael A. Valdez and Margie A. Valdez
P.O. Drawer 2660
Lodi, CA 95241

**Lender:** Bank of Lodi, N.A.
Lodi Office
701 South Ham Lane
Call Box 3009
Lodi, CA 95242

**Principal Amount: $318,500.00** **Date of Agreement: September 16, 2003**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** On August 28, 2003, the Borrower became obligated to Lender on a Promissory Note in the original amount of $318,500.00.

**DESCRIPTION OF COLLATERAL.** Deed of Trust dated August 28, 2003 on real property located at 20350 North Kennefick Road, Acampo, CA 95220.

**DESCRIPTION OF CHANGE IN TERMS.** Change payment due date from the 1st of each month to the 15th of each month. First payment due is October 15, 2003. Change monthly payment amount (see payment description). All other Terms and Conditions remain the same.

**PROMISE TO PAY. Daniel G. Mills, Sally A. Mills, Michael A. Valdez and Margie A. Valdez ("Borrower") jointly and severally promise to pay to Bank of Lodi, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Eighteen Thousand Five Hundred & 00/100 Dollars ($318,500.00), together with interest on the unpaid principal balance from August 28, 2003, until paid in full.**

**PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 179 monthly consecutive principal and interest payments in the initial amount of $2,936.99 each, beginning October 15, 2003, with interest calculated on the unpaid principal balances at an interest rate based on the Bank's Base Rate (Three Year Reset) (currently 4.500%), plus a margin of 1.750 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.250%; and one principal and interest payment of $2,928.42 on September 1, 2018, with interest calculated on the unpaid principal balances at an interest rate based on the Bank's Base Rate (Three Year Reset) (currently 4.500%), plus a margin of 1.750 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.250%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Agreement. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this Agreement is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.** The interest rate on this Agreement is subject to change from time to time based on changes in an index which is the Bank's Base Rate (Three Year Reset) (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each 36 Months. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.500% per annum. The interest rate or rates to be applied to the unpaid principal balance of the Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in the Note will be subject to the following minimum and maximum rates.** NOTICE: Under no circumstances will the interest rate on the Note be less than 7.250% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $50.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of Lodi, N. A., Call Box 3009 Lodi, CA 95241-1913.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Agreement shall immediately increase by 6.000 percentage points, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false

# CHANGE IN TERMS AGREEMENT
## (Continued)

or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of San Joaquin County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Deed of Trust dated August 28, 2003 on real property located at 20350 North Kennefick Road, Acampo, CA 95220.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank of Lodi, N. A. Call Box 3009 Lodi, CA 95241-1913

**MISCELLANEOUS PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**CONTINUED ON NEXT PAGE**

**Loan No: 2002103**

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____
Daniel G. Mills

X _____
Michael A. Valdez

X _____
Sally A. Mills

X _____
Margie A. Valdez

LASER PRO Lending, Ver. 5.22.30.003  Copr. Harland Financial Solutions, Inc. 1997, 2002.  All Rights Reserved.  - CA  L:\CFI\LPL\D20C.FC  TR-1234  PR-13

# EXHIBIT 3

**RECORDATION REQUESTED BY:**
Bank of Lodi, N.A.
Lodi Office
701 South Ham Lane
Call Box 3009
Lodi, CA 95242

**WHEN RECORDED MAIL TO:**
Bank of Lodi, N. A.
Call Box 3009
Lodi, CA 95241-1913

ORTC
1212019943m

RECEIVED

SEP 2 - 2003

DOC # 2003-210170
09/12/2003 01:28P Fee·39 00
Page 1 of 11
Recorded in Official Records
County of San Joaquin
GARY W. FREEMAN
Assessor-Recorder-County Clerk
Paid by OLD REPUBLIC TITLE CO

2002103

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated August 28, 2003, among Daniel G. Mills and Sally A. Mills, Husband and Wife, as Joint Tenants, as to an undivided 1/2 interest, whose address is 6422 Alexandria Place, Stockton, CA 95207 and Michael A. Valdez and Margie A. Valdez, Husband and Wife, as Joint Tenants, as to an undivided 1/2 interest, whose address is 10123 Creekside, Stockton, CA 95219 ("Trustor"); Bank of Lodi, N.A., whose address is Lodi Office, 701 South Ham Lane, Call Box 3009, Lodi, CA 95242 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Western Auxiliary Corporation, whose address is 701 S. Ham Lane, Call Box 3009-1913, Lodi, CA 95241 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in San Joaquin County, State of California:

See Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as  20350 North Kennefick Road, Acampo, CA 95220. The Assessor's Parcel Number for the Real Property is 017-140-42

FUTURE ADVANCES. Specifically, without limitation, this Deed of Trust secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Trustor, together with all interest thereon.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property;  (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.

Duty to Maintain. Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any

Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive



# DEED OF TRUST
## (Continued)

general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any



# DEED OF TRUST
## (Continued)

default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.



**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents. If such a failure is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Trustor, after Lender sends written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If such a failure is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Trustor, after Lender sends written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder

 

for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of San Joaquin County,



2002-210179

State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of San Joaquin County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Bank of Lodi, N.A., and its successors and assigns.

**Borrower.** The word "Borrower" means Daniel G. Mills, Sally A. Mills, Michael A. Valdez and Margie A. Valdez and includes all co-signers



and co-makers signing the Note.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Deed of Trust, together with all interest thereon.

**Lender.** The word "Lender" means Bank of Lodi, N.A., its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 28, 2003, **in the original principal amount of $318,500.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Western Auxiliary Corporation, whose address is 701 S. Ham Lane, Call Box 3009-1913, Lodi, CA 95241 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Daniel G. Mills, Sally A. Mills, Michael A. Valdez and Margie A. Valdez.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
Daniel G. Mills, Individually

X _____
Sally A. Mills, Individually

X _____
Michael A. Valdez, Individually

X _____
Margie A. Valdez, Individually

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF California )
) SS
COUNTY OF San Joaquin )

On September 2, 2003 before me, Lisa M. O'Brion N.P. personally appeared Daniel G. Mills; Sally A. Mills; Michael A. Valdez; and Margie A. Valdez, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

LISA M. O'BRION
COMM. #1244356
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
My Commission Expires Dec. 3, 2003
(Seal)

## (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____        Beneficiary: _____

                                           By: _____

                                           Its: _____

LASER PRO Lending, Ver. 5.22.10.008 Copr. Haland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - CA LICFALPL\G01.FC TR-3351 PR-33

# EXHIBIT A

The land referred to in this Report is situated in the unincorporated area of the County of San Joaquin, State of California, and is described as follows:

A portion of Section 29, Township 4 North, Range 7 East, Mount Diablo Base and Meridian and being more particularly described as follows:

Beginning at a point in the East line of the property of the Central California Traction Company, said point being South 0° 05' West 1940.15 feet and East 70.00 feet of the Northwest corner of said Section 29; thence South 89° 47' 20" East 620.00 feet; thence South 0° 05' West, a distance of 684.09 feet to a point in the South line of the Northwest Quarter of Section 29, Township 4 North, Range 7 East, Mount Diablo Base and Meridian; thence North 89° 47' 20" West along the said South line, a distance of 620 feet to a point in the East line of the property of the Central California Traction Company; thence North 0° 05' East along said East line, a distance of 684.09 feet to the point of beginning.

APN No: 017-140-42

# EXHIBIT 4

B6D (Official Form 6D) (12/07)

In re _Mills, Daniel G._        Case No. _2009-21258_
—————————————————————————
         **Debtor(s)**                                           (if known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See. 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including ZIP Code and Account Number *(See Instructions Above)* | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien H--Husband W--Wife J--Joint C--Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No.<br>Creditor # : 1<br>Bank of America<br>c/o Eskanos & Adler<br>2325 Clayton Road<br>Concord CA 94520 | | 2006<br>Judgment Lien<br>20400 N. Kennefick Road<br><br>Value: $ 700,000.00 | | X | | $ 12,000.00 | $ 0.00 |
| Account No:<br>Creditor # : 2<br>Calone Law Group<br>1810 Grand Canal Blvd., Ste. 6<br>Stockton CA 95207 | X | 2006<br>Second Deed of Trust<br>20400 N. Kennefick Road<br><br>Value: $ 700,000.00 | | X | | $ 25,000.00 | $ 0.00 |
| Account No: 2372<br>Creditor # : 3<br>Countrywide<br>P.O. Box 10219<br>Van Nuys CA 91410 | X | 2004<br><br>1st deed of trust on 3618 Five Forks Drive, Stockton, CA<br><br>Value: $ 288,000.00 | | X | | $ 308,000.00 | $ 20,000.00 |

2      continuation sheets attached

                                                 Subtotal $    $ 345,000.00      $ 20,000.00
(Total of this page)
Total $
(Use only on last page)

(Report also on Summary of Schedules.)      (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

In re _Mills, Daniel G._

_____
Debtor(s)

Case No. _2009-21258_

(if known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

(Continuation Sheet)

| Creditor's Name and Mailing Address Including ZIP Code and Account Number (See Instructions Above.) | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien H--Husband W--Wife J--Joint C--Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No: 3692<br>Creditor # : 4<br>Employment Development Dept.<br>Bankruptcy/Spec. Proc. Group<br>P.O. Box 826900, MIC:92E<br>Sacramento CA 94280 | X | 2007<br>Tax Lien<br>20400 N. Kennefick Road<br><br>Value: $ 700,000.00 | | | | $ 40,000.00 | $ 0.00 |
| Account No: 9686<br>Creditor # : 5<br>Franchise Tax Board<br>Bankruptcy Unit<br>P.O. Box 2952<br>Sacramento CA 95812 | | Personal income tax lien<br>20400 N. Kennefick Road<br><br>Value: $ 700,000.00 | | | X | $ 27,000.00 | $ 0.00 |
| Account No:<br>Creditor # : 6<br>Guntert Sales<br>c/o Sweet & Walker<br>6073 Mission Street<br>Daly City CA 94014-2007 | X | 2005<br>Judgment Lien<br>20400 N. Kennefick Road<br><br>Value: $ 700,000.00 | | | X | $ 40,000.00 | $ 0.00 |
| Account No:<br>Creditor # : 7<br>Internal Revenue Service<br>Insolvency Section SA 5357<br>4330 Watt Avenue<br>North Highlands CA 95660 | X | 2007<br>Tax Lien<br>20400 N. Kennefick Road<br><br>Value: $ 700,000.00 | | | | $ 155,000.00 | $ 0.00 |
| Account No:<br>Creditor # : 8<br>Kearney's Metals<br>c/o Seals & Tenenbaum<br>2323 W. Lincoln, #127<br>Anaheim CA 92801 | X | 2008<br>Judgment Lien<br><br>Value: $ 700,000.00 | | | X | $ 10,000.00 | $ 10,000.00 |
| Account No:<br>Creditor # : 9<br>San Joaquin Tax Collector<br>P.O. Box 2169<br>Stockton CA 95201 | X | 2003-08<br>Real property taxes<br>20400 N. Kennefick Road<br><br>Value: $ 700,000.00 | | | X | $ 80,000.00 | $ 0.00 |

Sheet no. 1 of 2 continuation sheets attached to Schedule of Creditors
Holding Secured Claims

Subtotal $ (Total of this page)    $ 352,000.00    $ 10,000.00

Total $ (Use only on last page)

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data)

In re _Mills, Daniel G._ _____,    Case No. _2009-21258_ _____
              **Debtor(s)**                                                              (if known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

(Continuation Sheet)

| Creditor's Name and Mailing Address Including ZIP Code and Account Number (See Instructions Above.) | Co-Debtor | Date Claim was Incurred, Nature of Lien, and Description and Market Value of Property Subject to Lien H--Husband W--Wife J--Joint C--Community | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|
| Account No: <br> Creditor # : 10 <br> SMC Corporation <br> c/o Glassberg Pollak <br> 425 California St., #850 <br> San Francisco CA 94104 | X | 2003 <br> Judgment Lien <br> 20400 N. Kennefick Road <br><br> Value: $ 700,000.00 | | | X | $ 25,000.00 | $ 0.00 |
| Account No: <br> Creditor # : 11 <br> WAMCO 32, Ltd. <br> c/o Nelson & Kennard <br> P.O. Box 13807 <br> Sacramento CA 95853 | X | 2007 <br> Judgment Lien <br><br> Value: $ 700,000.00 | | | | $ 128,000.00 | $ 83,100.00 |
| Account No: 5300 <br> Creditor # : 12 <br> Wells Fargo Bank <br> Post Office Box 3908 <br> Portland OR 97228 | X | 2003 <br><br> 1st deed of trust <br> 20400 N. Kennefick Road <br><br> Value: $ 700,000.00 | | | X | $ 251,100.00 | $ 0.00 |
| Account No: <br><br><br><br> | | <br><br><br> Value: | | | | | |
| Account No: <br><br><br><br> | | <br><br><br> Value: | | | | | |
| Account No: <br><br><br><br> | | <br><br><br> Value: | | | | | |

Sheet no. 2  of  2  continuation sheets attached to Schedule of Creditors
Holding Secured Claims

|  | Subtotal $ <br> (Total of this page) | $ 404,100.00 | $ 83,100.00 |
|---|---|---|---|
|  | Total $ <br> (Use only on last page) | $ 1,101,100.00 | $ 113,100.00 |
|  |  | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data) |